01

02

03

04

05

06

07                                    UNITED STATES DISTRICT COURT
                                    WESTERN DISTRICT OF WASHINGTON
08                                                 AT SEATTLE

09   LAMONE T. BLUE,                                )
                                                    )
10                    Plaintiff,                    )    Case No. 05-0315-TSZ-JPD
                                                    )
11             v.                                   )
                                                    )
12   C/O TABATHA DAVIS, et al.,                     )    REPORT AND RECOMMENDATION
                                                    )
13                    Defendants.                   )
     _____       )
14

15                        I.  INTRODUCTION AND SUMMARY CONCLUSION

16             Plaintiff Lamone T. Blue is an inmate at the Monroe Correctional Complex (the

17   "Prison") in Monroe, Washington.  He is proceeding pro se and in forma pauperis in this 42

18   U.S.C. § 1983 action against twenty-two prison officials.  Plaintiff alleges that defendants

19   violated his civil rights by accusing him of sexual harassment, assaulting him, denying him

20   medical treatment, harassing him, interfering with his legal mail, seizing property from his cell,

21   and denying him access to religious services.  Defendants deny they violated plaintiff's civil

22   rights and have moved for summary judgment.  Dkt. No. 47.  Plaintiff has submitted a response

23   to defendants' motion for summary judgment.[1]  Dkt. Nos. 48, 50-52, 57.  Having carefully

24   _____

25             [1]Plaintiff has presented the Court with pleadings of varying degrees of legibility and
     coherence throughout this action.  In response to defendants' motion for summary judgment,
26   plaintiff submitted a variety of unorganized and difficult-to-read grievance forms.  Dkt. No. 48.
     He then filed a memorandum, which the Court construed as a response to summary judgment.

     REPORT AND RECOMMENDATION
     PAGE -1

01  reviewed the parties' papers, supporting materials, and the record, the Court recommends that

02  defendants' motion for summary judgment, Dkt. No. 47, be GRANTED and that plaintiff's

03  claims against all defendants be DISMISSED.

04                            II.  FACTS AND PROCEDURAL HISTORY

05          Plaintiff is an inmate housed in the Prison's Special Offender Unit, a unit designed to

06  meet the mental-health needs of inmates who suffer from severe mental illness.  Dkt. No. 47,[2]

07  Carter Decl., Attach A; Burghduff Decl. at ¶ 2.  Beginning on February 18, 2005, plaintiff

08  attempted to file a 42 U.S.C. § 1983 civil-rights complaint against numerous Prison officials.

09  Dkt. No. 1.  The Court, however, declined to serve the complaint because it was nearly

10  illegible and extremely difficult to understand.[3]  Dkt. No. 5.

11          On April 20, 2005, plaintiff submitted an amended complaint.  Dkt. Nos. 6, 8.

12  Although it, too, was extremely difficult to understand, it appeared to allege that certain

13  correctional officers had assaulted him, denied him medical care, interfered with his legal mail

14  _____

15  Dkt. No. 50.  Plaintiff continued to submit grievance forms well after the dispositive motion
16  deadline and on January 19, 2006, the Court directed the Clerk to begin returning these filings.
    Dkt. Nos. 51-52, 55-56.  On January 30, 2006, after the dispositive motion deadline, plaintiff
17  submitted an unsigned additional motion in opposition to summary judgment.  Dkt. No. 57.
    The Court has carefully reviewed this untimely motion and determined that it does not create
18  any genuine issue of material fact.

19          [2]All declarations and supporting materials are part of Dkt. No. 47.  They are referred to
20  throughout this Report and Recommendation by the document title.

21          [3]Initially, the Clerk informed plaintiff that his application to proceed in forma pauperis,
    ("IFP") was deficient and instructed him to correct the deficiencies within thirty days.  Dkt. No.
22  3.  On March 18, 2005, plaintiff corrected his IFP deficiency and submitted an amended
    complaint.  Dkt. No. 4.  The amended complaint contained claims similar to those in his first
23  complaint, as well as new and different claims.  *Id.*  In addition to the amended complaint,
    plaintiff submitted to the Court dozens of other documents, including several § 1983 complaints
24  that appeared to name both new and already-named defendants.  Because these documents were
    nearly illegible and extremely difficult to decipher, the Court declined to serve them.  Dkt. No.
25  5.  Instead, it ordered plaintiff to consolidate his claims and defendants onto one legible form,
    advised plaintiff of the guidelines for submitting a proper § 1983 complaint, and gave him thirty
26  days to correct the deficiencies.  *Id.*

REPORT AND RECOMMENDATION
PAGE -2

01   and property, and sexually harassed him.  Dkt. No. 8.  Because of the seriousness of the

02   allegations, the Court directed service as to fourteen of the defendants named in the complaint.

03   Dkt. No. 9.

04        In the meantime, plaintiff had been attempting to bring a separate § 1983 suit against

05   eleven Prison officials for allegedly interfering with his access to religious services.[4]  Case

06   No.C05-431-TSZ-MAT, Dkt. Nos. 1-13.  On July 26, 2005, the two cases were consolidated

07   under case number C05-315 because they involved overlapping defendants, claims, and facts.

08   Dkt. No. 31.  Plaintiff's consolidated suit alleges that the twenty-two defendants named in this

09   action accused him of sexual harassment, denied him proper medical care, assaulted him,

10   interfered with his legal mail, seized property in his cell, and denied him access to Islamic

11   religious services.

12                          III.  DISCUSSION

13        A.    Legal Standards Governing Motions for Summary Judgment.

14        Summary judgment is appropriate when, viewing the evidence in the light most

15   favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such

16   that "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A

17   material fact is a fact relevant to the outcome of the pending action.  *See Anderson v. Liberty*

18   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Genuine issues of material fact exist when the

19   evidence would enable "a reasonable jury . . . [to] return a verdict for the nonmoving party."

20   *Id*.  In response to a summary-judgment motion that is properly supported, the nonmoving

21   party may not rest upon mere allegations or denials in the pleadings, but must set forth specific

22   facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish

23

24   _____

25        [4] Because plaintiff's materials in that case were similarly difficult for the Court to
     decipher, it declined to serve the original complaint and returned plaintiff's supplementary
     materials.  Case No. C05-431-TSZ-MAT, Dkt. No. 10.  Plaintiff submitted an amended
26   complaint and on June 20, 2005, the Court directed service as to eleven of the defendants
     named therein.  Dkt. Nos. 11, 13.

REPORT AND RECOMMENDATION
PAGE -3

01  the existence of the elements essential to his case.[5]  *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v.*

02  *Cattrett*, 477 U.S. 317, 323 (1986).  A mere scintilla of evidence, however, is insufficient to

03  create a factual dispute.  *See Anderson*, 477 U.S. at 252.

    B.   Plaintiff Fails to State a Claim Against Defendants Frantz, Hall,
04        Headley, and Ingram.

05  To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert that he

06  suffered a violation of rights protected by the Constitution or created by federal statute, and

07  that the violation was proximately caused by a person acting under color of state or federal

08  law.  *See Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991); *see also WMX*

09  *Technologies, Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en banc).  Section 1983

10  liability arises only on a showing that defendants personally participated in violating plaintiff's

11  civil rights.  Respondeat superior liability will not support § 1983 liability unless plaintiff

12  demonstrates that a supervisor participated in the violations, directed the violations, or knew

13  about the violations and did nothing to prevent them.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th

14  Cir. 1989) (internal citation omitted); *see also Mabe v. San Bernardino County Dep't of Pub.*

15  *Soc. Serv.*, 237 F.3d 1101, 1109 (9th Cir. 2001).

16  In this case, plaintiff has failed to allege that defendants Frantz,[6] Hall, Headley, and

17  Ingram personally participated in any violation of his civil rights or to proffer any evidence of

18

19  ───────────────

20      [5]The Court must consider as evidence "all of [a plaintiff's] contentions offered in
    motions and pleadings, where such contentions are based on personal knowledge and set forth
21  facts that would be admissible in evidence, and where [the plaintiff] attested under penalty of
    perjury that the contents of the motions or pleadings are true and correct."  *Jones v. Blanas*,
22  393 F.3d 918, 923 (9th Cir. 2004) (collecting cases).  None of the materials submitted by
    plaintiff satisfy this standard, including his response to summary judgment, because they are all
23  unsworn and unauthenticated.  Moreover, these documents are nearly illegible, are in no order,
    and are only vaguely referenced, if at all, in plaintiff's moving papers.
24

25      [6]Plaintiff's complaint named a Sergeant Frances, but the Department of Corrections was
    unable to identify anyone by that name.  Instead, service was made upon Lieutenant L.W.
26  Frantz, though it is not clear that he is the person plaintiff intended to include in this suit.  Dkt.
    No. 47 at 10 & n.3.

REPORT AND RECOMMENDATION
PAGE -4

01  such personal participation.  Plaintiff's complaint vaguely references defendants Frantz and

02  Hall only as "witnesses," and individuals who "kn[e]w about" alleged constitutional violations

03  committed by other correctional officers.  Dkt. No. 8 at 5.  Similarly, the complaint's primary

04  reference to defendant Headley is to indicate that she knew plaintiff  "was in bad shape" at

05  some point during his incarceration.  *Id.*  Finally, the complaint identifies defendant Ingram as

06  someone "who was there[.]"  Case No. 05-0431, Dkt. No. 11 at 4.  Even when considering the

07  plaintiff's complaint as entirely true, it is impossible to determine how any of the defendants

08  personally participated in violating his civil rights.  The complaint thus fails to state a claim

09  upon which relief can be granted.  Plaintiff's claims against these defendants should therefore

10  be dismissed.

11          C.      Plaintiff's Allegations of Sexual Harassment Against Defendants Davis,
                    Kingstad, O'Brien-Smith, and Spalding Fail to State a Claim.

12

13          Kites, which are written communications between inmates and correctional officers,

14  indicated that the plaintiff was flirting with Correctional Officer ("Officer") Davis.  Davis Decl.

15  at ¶ 5.  Officer Davis asked the plaintiff whether he was, in fact, making such statements, which

16  plaintiff denied.  *Id.* at ¶¶ 6-7.  Officer Davis stated she was glad that he was not making any

17  such statements, because if he were, he would be charged with an infraction.  *Id.* at ¶ 8.

18  Plaintiff's complaint alleges that defendant Officer Davis violated his civil rights by asking him

19  whether he was making the statements, which, he claims, amounts to sexual harassment.  Dkt.

20  No. 8 at 1.  The Court is unaware of any authority which holds that such an inquiry violates an

21  individual's civil rights.  Therefore, this claim should be dismissed.

22          Plaintiff's complaint appears to allege that defendants Kingstad, O'Brien-Smith, and

23  Spalding violated his civil rights by failing to reprimand Officer Davis for inquiring about

24  whether he had sexually harassed her.  Dkt. No. 8 at 2-3.  Because plaintiff's complaint fails to

25  state a claim against Officer Davis, his claims that these defendants failed to reprimand her

26  must be dismissed as well.  *See Taylor*, 880 F.2d at 1045 (indicating supervisory liability will

    only lie in circumstances involving a constitutional violation).

REPORT AND RECOMMENDATION
PAGE -5

D.      Plaintiff's Allegations of Verbal Harassment By Defendants Ballweber,
        Beecroft, Cope, Fuentes, and Fairchild Fail to State a Claim.

Plaintiff also alleges that defendants Ballweber, Beecroft, Cope, Fuentes, and Fairchild verbally harassed him by calling him names. Dkt. No. 8 at 7-8. Although he offers few details, he does allege that defendant Fairchild called him "bitch, bitch, bitch[.]" *Id*. at 8. Although verbal harassment is not and cannot be condoned by the Court, statements of this type, if actually made,[7] generally do not violate the Eighth Amendment. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987). Defendants Beecroft, Fuentes, and Cope are also accused of giving the plaintiff an additional twenty days in segregation. However, the segregation was ordered by a hearing officer (who is not a party to this action) in response to infractions he received. Hinrichsen Decl. at Attachs. A-E. These defendants did not have the authority to impose administrative segregation. Fuentes Decl. at ¶¶ 7-9; Cope Decl. at ¶¶ 5-8. The plaintiff has failed to state claims against these defendants.

E.      Plaintiff's Allegations of Lost Property Against Defendants Davis and
        Lopez Fail to State a Claim.

Plaintiff's complaint also makes a vague reference that certain correctional officers may have removed or lost some of his personal property from his cell. Dkt. No. 8 at 6, 9. The complaint also indicates that defendant Correctional Officers Davis and Lopez may have been involved in the alleged incident, but provides no description of how they were involved, in what circumstances the items may have been taken, and whether they were ever returned. *Id.* Inmates have no reasonable expectation of privacy in their cells or the possessions within them. *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984)); *see also Nakao v. Rushen*, 766 F.2d 410, 412 (9th Cir. 1985) ("fourth amendment's proscription against unreasonable searches does not apply to the confines of a prison cell"). Moreover, "the fourth amendment does not protect an inmate from the seizure

---

[7]Officer Fairchild denies calling the plaintiff a "bitch," although he acknowledges that he may have told the plaintiff to stop "bitching." Fairchild Decl. at ¶¶ 6-8.

REPORT AND RECOMMENDATION
PAGE -6

and destruction of his property[.]" *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989). Even if plaintiff did have such a right, the complaint is too vague and conclusory to articulate adequately a constitutional violation against these defendants. *Sprewell,* 266 F.3d at 988.

F.   Plaintiff Fails to Show the Existence of a Genuine Issue of Material Fact Relating to His Eighth Amendment Medical Claims.

Plaintiff's complaint alleges that various defendants violated his Eighth Amendment rights by ignoring and failing to treat a serious medical condition. He appears to allege that his face "bl[e]w up" and that defendants Ballweber, Beecroft, and Fairchild ignored this and told him "[we] don't care if your face falls off." Dkt. No. 8 at 4-5. Plaintiff further argues that defendants Cope, Fuentes, and Long "denied help" and that Nurse Burghduff lied to him about ensuring he would receive medical care. *Id.* at 4-5. He also claims that defendants Spalding and Glebe rendered "no help[,] nothing[.]" *Id.* at 5.

The Eighth Amendment requires prison officials to provide proper medical care for inmates. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (citing *Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir. 1988) and *Estelle v. Gamble,* 429 U.S. 97 (1976)). Not every breach of that duty, however, states a constitutional claim. "In order to violate the Eighth Amendment's proscription against cruel and unusual punishment, prison officials must show 'deliberate indifference' to serious medical needs of prisoners." *Id.* (quoting *Estelle,* 429 U.S. at 104). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment . . . Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.* (internal citations and quotations omitted).

Plaintiff has failed to demonstrate the existence of a genuine issue of material fact as to

REPORT AND RECOMMENDATION
PAGE -7

whether any of these defendants were deliberately indifferent to his medical needs.  Each of these defendants has submitted sworn affidavits and documentary evidence that indicates they did not violate plaintiff's Eighth Amendment rights.  Defendant Nurse Burghduff examined plaintiff on Saturday, February 26, 2005, when he inquired about obtaining antibiotics for a tooth problem.  Burghduff Decl. at ¶ 5.  She saw no visible swelling and detected no fever.  *Id.* at ¶ 6.  Nurse Burghduff performed a follow-up exam the next day and noticed some swelling in plaintiff's jaw.  *Id.* at ¶ 7.  She ordered prescriptions for antibiotics and pain medication, and notified staff to contact the dentist, who would return on Monday.  *Id.*  Plaintiff has produced no facts suggesting that these actions were not taken or were improper.

Defendant Ballweber was a correctional officer on duty that weekend.  He heard plaintiff complain about pain in his face as well, but observed no swelling or discoloration.  Ballweber Decl. at ¶ 5.  He had been told by guards on the previous shift that medical staff had been notified of plaintiff's condition and that proper care had been arranged.  *Id.* at ¶ 6.[8]  Additionally, defendant Officer Beecroft has indicated that he did not deny plaintiff any care or make such statements because he did not work the weekend in question.  Beecroft Decl. at ¶ 8.  Similarly, defendant Officers Long and Fuentes have stated that they did not deny plaintiff medical care and assert that medical personnel were properly notified.[9]  Long Decl. at ¶ 5;

---

[8]Officers Ballweber and Fairchild deny telling plaintiff they did not care if his face fell off.  Ballweber Decl. at ¶ 7; Fairchild Decl. at ¶ 8.

[9]Defendant Cope has not directly denied plaintiff's allegations against him, but the foregoing evidence demonstrates there is no genuine issue of material fact as to whether plaintiff was provided adequate medical care in this case.  *See generally*, Cope Decl.  Even if this evidence were insufficient for purposes of summary judgment, plaintiff's complaint against defendant Cope would be dismissed for failure to state a claim.  Plaintiff's complaint indicates defendant "Cope denied" without specifying any meaningful additional facts.  *Sprewell,* 266

REPORT AND RECOMMENDATION
PAGE -8

Fuentes Decl. at ¶ 5.  They have stated that they properly followed prison procedure and notified medical personnel of plaintiff's situation.  Fuentes Decl. at ¶ 5; Long Decl. at ¶ 5. Finally, defendants Spalding and Glebe have indicated they had no role in either denying or providing plaintiff medical care during the time in question.  *See generally*, Glebe Decl. and Spalding Decl.  This evidence demonstrates that the defendants knew of plaintiff's medical needs and took timely and appropriate steps to ensure he received proper care.  Plaintiff has produced no evidence suggesting these defendants acted inappropriately or were deliberately indifferent to his medical needs.  The plaintiff's medical claims should be dismissed.

> G. <u>Plaintiff Fails to Show the Existence of a Genuine Issue of Material Fact Relating to his Assault Claim Against Officer Williams.</u>

Plaintiff's complaint also alleges that he was assaulted by defendant Correctional Officer Williams and that "Williams [sic] is control of his own action to beating up [sic] mental SOU inmate."  Dkt. No. 8 at 3.  Defendant Williams has indicated that he did not "use any type of force on [plaintiff] at any time."  Williams Decl. at ¶ 5.  Plaintiff has provided no relevant admissible evidence to rebut defendant's denial and therefore failed to demonstrate the existence of a genuine issue of material fact.

> H. <u>Plaintiff Fails to Show the Existence of a Genuine Issue of Material Fact Relating to His Claims That Defendants Fairchild and Toyoda Interfered With His Legal Mail.</u>

Plaintiff's complaint alleges that "Keith Toyoda . . . refused [his] legal mail" and that Officer Fairchild "was reading [his] legal mail."  Dkt. No. 8 at 6, 8.  The First Amendment permits prison officials to impose certain restrictions upon an inmate's legal mail.  Prison

_____

F.3d at 988.

REPORT AND RECOMMENDATION
PAGE -9

officials may (1) require that mail from attorneys be properly identifiable; and (2) open and inspect a prisoner's legal mail in the prisoner's presence. *Wolff v. McDonnell*, 418 U.S. 539 576-77 (1974); *Sherman v. MacDougall*, 656 F.2d 527, 528 (9th Cir. 1981). Here plaintiff has not indicated that any alleged inspection of his legal mail was inconsistent with these fundamental requirements.

In addition, plaintiff has not provided evidence to rebut the declarations from Messrs. Fairchild and Toyoda that they did not unconstitutionally interfere with plaintiff's legal mail. Officer Fairchild has indicated that any screening of plaintiff's mail he conducted was done in his presence and consistent with the Prison's policies. Fairchild Decl. at ¶¶ 3, 5. Similarly, defendant Toyoda, a Mental Health Counselor at the Prison, has indicated that he never "refused" any of plaintiff's incoming or outgoing legal mail. Toyoda Decl. at ¶ 6. Rather, he said that he "occasionally assisted [plaintiff] in preparing his paperwork . . . [because his] writing style made it difficult for staff to decipher[.]" *Id*. at ¶ 5. Claims against defendants Fairchild and Toyoda relating to allegations of interference with legal mail should be dismissed.

I.    Claims Against Defendants Davis and Lopez for Interference With
      Access to Religious Services Should be Dismissed.

Plaintiff claims that several correctional officers caused him to miss Islamic religious services at the Prison. He alleges that defendants Davis and Lopez "lied to him . . . about [when] Islamic services [were scheduled]," which caused him to miss them on March 5, 2005. Case No. C05-431-TSZ-MAT, Dkt. No. 11 at 2. Each of these defendants, however, is entitled to summary judgment on the basis of qualified immunity.

Public officials who perform discretionary functions enjoy qualified immunity in a civil action for damages, provided that his or her conduct does not violate clearly established federal

REPORT AND RECOMMENDATION
PAGE -10

01 statutory or constitutional rights of which a reasonable person would have known.  *Harlow v.*

02 *Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citations omitted).  To determine whether a

03 defendant is entitled to qualified immunity, the Court must first analyze whether the facts,

04 when taken in the light most favorable to the plaintiff, demonstrate that the defendant's

05 conduct violated a constitutional right.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Cruz v.*

06 *Kauai County*, 279 F.3d 1064, 1068-69 (9th Cir. 2002).  If a violation is articulated, the Court

07 must ascertain whether the constitutional right at issue was "clearly established" at the time of

08 the alleged violation.  *Saucier,* 533 U.S. at 201; *Cruz,* 279 F.3d at 1069.  The right must be

09 established at more than an abstract level.  *Saucier,* 533 U.S. at 201.  Rather,"[t]he contours of

10 the right must be sufficiently clear that a reasonable official would understand that what he is

11 doing violates that right."  *Id.* at 202 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640

12 (1987)); *see also Cruz*, 279 F.3d at 1069.

13        Although prison inmates retain their First Amendment right to practice their religion

14 freely, that right is limited by virtue of their incarceration.  *Friend v. Kolodzieczak*, 923 F.2d

15 126, 127 (9th Cir. 1991).  "In order to establish a free exercise violation, [Plaintiff] must show

16 the defendants burdened the practice of his religion, by preventing him from engaging in

17 conduct mandated by his faith, without any justification reasonably related to legitimate

18 penological interests."  *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) (internal

19 citations omitted).  To determine whether the conduct of prison officials was reasonable, the

20 Court should consider:  (1) whether the regulation involved has a logical connection with a

21 legitimate government interest; (2) whether the inmate has an alternative means to exercise the

22 asserted right; and (3) the severity of the impact that accommodating the requested exercise

REPORT AND RECOMMENDATION
PAGE -11

01  would have upon prison resources.  *Id.* (internal citations omitted).

02          In this case, defendants are entitled to summary judgment because their conduct was

03  not unreasonable.  No prison rule or regulation is in question.  Rather, plaintiff's sole allegation

04  appears to relate to the accuracy of information provided by defendants on the weekends of

05  March 5 and 12 in 2005.  Case No. C05-431-TSZ-MAT, Dkt. No. 11 at 2.  Defendant Davis

06  has indicated that she *accidentally* gave plaintiff inaccurate information regarding the

07  availability of Islamic services because she misread the religious-services bulletin.  Davis Decl.

08  at ¶¶ 17-19.  She denies having lied or intentionally mislead plaintiff about the availability of

09  such services.  *Id.*  Similarly, defendant Lopez has denied that he ever restricted plaintiff's

10  access to religious services or that he provided plaintiff inaccurate information regarding such

11

12  services.  Lopez Decl. at ¶¶ 5-6.  Plaintiff has not offered any evidence to refute these facts or

13  to suggest that these officers acted unreasonably.  Hence, the actions of defendants Davis and

14  Lopez were not unreasonable and they are entitled to summary judgment on the basis of

15  qualified immunity.

16

17          Plaintiff's complaint also states that Officers Lizarraga, Misiano, and Walker "made

18  [him] miss Islamic services" the weekend beginning March 11, 2005.  Case No. C05-431-TSZ-

19  MAT, Dkt. No. 11 at 2.  He appears to claim that defendants Kingstad and Spalding should

20  have taken action to correct the alleged actions of these officers.  *Id.*  However, no Islamic

21  services were held on the weekend of March 11, 2005.  Walker Decl. at ¶ 4.  Hence, none of

22  the above-named officers could have made plaintiff miss any Islamic services that weekend.

23

24  Additionally, because none of the officers violated plaintiff's First Amendment rights, his

25  claims that defendants Kingstad and Spalding should have corrected their actions must fail as

26

REPORT AND RECOMMENDATION
PAGE -12

well.  Thus, all of these defendants are entitled to summary judgment.

## IV.  CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment should be granted and the case dismissed as to all defendants.  A proposed Order accompanies this Report and Recommendation.

DATED this 2nd day of February, 2006.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -13